IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| DAVID R. PETE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:25-CV-00396-MJT |
| | § | |
| GREG ABBOTT, *in his official capacity as* | § | |
| GOVERNOR of the STATE OF TEXAS; | § | |
| and KEN PAXTON, *in his official capacity* | § | |
| *as* ATTORNEY GENERAL OF THE | § | |
| STATE OF TEXAS | § | |
| | § | |
| *Defendants*. | § | |

## REPORT AND RECOMMENDATION TO IMPOSE RULE 11 SANCTIONS

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the Honorable Christine L. Stetson, United States Magistrate Judge, to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. Tex. Loc. R. CV-72.

### I. Background

On November 20, 2025, the district court ordered *pro se* Plaintiff David R. Pete to show cause as to why he should not be sanctioned under Federal Rule of Civil Procedure 11(b) for filing papers with the court that contain false factual contentions and fake caselaw. (Doc. #12.) The district court requested that the undersigned conduct an evidentiary hearing on this matter and issue a report and recommendation on whether to sanction Plaintiff under Rule 11. (*Id*.) The court held that hearing in person with Plaintiff from 10:00 to 11:40 a.m. on Tuesday, January 6, 2026. *See* (docs. #16; #17).

Alongside the Rule 11 problem here, the January 6 hearing concerned Plaintiff's litigation behavior in general because, due to his filings in another case, *Pete v. United States Department of Treasury*, No. 1:25-CV-68-MJT-CLS, Judge Truncale also requested a recommendation on whether Plaintiff should be designated as a vexatious litigant and subjected to a prefiling injunction in the Eastern District of Texas, *id.* ECF No. 29. *See* (doc. #17 at 3–5). The vexatious-litigant recommendation, issued contemporaneously to this one, has a more detailed account of Plaintiff's litigation history in the Beaumont Division. In this Report and Recommendation, the undersigned focuses only on Plaintiff's sanctionable court filings here.

### A. Plaintiff's Flurry of Frivolous and Falsehood-Filled Filings

As the district court said, "Plaintiff's filings in this case are replete with falsehoods which may violate Rule 11(b)." (Doc. #12 at 2.) Plaintiff filed suit on August 6, 2025. He also moved for leave to proceed *in forma pauperis* (*ifp*). His complaint was accordingly screened pursuant to 28 U.S.C. § 1915 and found to be frivolous. Instead of dismissal under § 1915(e)(2), however, the undersigned recommended denial of Plaintiff's *ifp* motion to prevent abuse of the pauper privilege. *See* (doc. #3). Plaintiff filed an objection to that recommendation (doc. #4), but therein he cited a case that the district court could not locate, "*Maddox v. Saita*," so the district court ordered Plaintiff to file a copy of *Maddox v. Saita* by September 9, 2025. *See* (doc. #6). On September 3, 2025, Plaintiff responded that he would "file a certified copy of the case" by the deadline (doc. #7 at 2), but as the district court later noted on October 14, 2025, Plaintiff never filed a copy of the case. (Doc. #9 at 2.) He still has not filed a copy of *Maddox v. Saita*.[1]

In the October 14 order, the district court also noted that Plaintiff's September 3 response included citation to and discussion of "at least five other cases" that were likely the product of AI

---

[1.] He never will. It was confirmed at the hearing that the case *Maddox v. Saita* and Plaintiff's citation to it were hallucinated by artificial intelligence (AI). (Doc. #17 at 14:7–18:9.)

hallucination. *See* (doc. #9 at 2). The district court concluded that "Plaintiff's response did nothing but waste . . . time," "def[y] a court order," and make "false statements." (*Id.*) It therefore overruled his objection, adopted the undersigned's recommendation, and denied Plaintiff's motion to proceed *ifp*. (*Id.* at 3.) Finally, the district court instructed that Plaintiff pay the filing fee "or have his case dismissed for failure to prosecute." (*Id.*)

Plaintiff did not pay the filing fee in time. Instead, he filed an "objection" to the October 14 order. *See* (doc. #10). In response, on November 20, 2025, the district court construed the objection as a motion for reconsideration and denied it. (Doc. #12.) The court was "perturbed" by the content of Plaintiff's filing: the court described "Plaintiff's representations" therein as "patently false, wholly contradicted by the record, and not provable with evidence." (*Id.* at 3 (citing FED. R. CIV. P. 11(b)(3), (4)).) Because of the false statements, AI-hallucinated citations, and other factual misrepresentations by Plaintiff, the district court's November 20 order included the request to conduct the Rule 11 show-cause hearing with Plaintiff. *See* (*id.*).

On November 26, 2025, the undersigned set the hearing for January 6, 2026, and ordered Plaintiff to bring a copy of *Maddox v. Saita* with him. (Doc. #13.) The court further ordered him to, by December 19, 2025, submit copies of all the (suspected) AI-created cases that he had cited in his filings (*id.* at 2). Plaintiff submitted his response(s$^2$) on December 8, 2025 (docs. #14; #15).

### B. January 6th

Plaintiff appeared at the show-cause hearing on January 6, 2026. Regarding this case, the undersigned introduced the "three things that Judge Truncale is concerned about in . . . [his] filings:" (1) "the use of what is clearly fake case law," (2) the inclusion "of demonstrably false facts," and (3) "unnecessary delay." (Doc. #17 at 4:21–5:4.)

---

[2.] Plaintiff filed two separate responses simultaneously. The second listed docket entry (doc. #15) effectively repeats the first (doc. #14) but with more elaboration. Both were addressed at the hearing.

At the hearing, Plaintiff provided sworn testimony. (*Id.* at 5:13.) He began, "the conduct does not warrant sanctions because all pleadings were filed in good faith based on the reasonable inquiry for *pro se* litigants and were not presented for any improper purpose." (*Id.* at 5:25–6:3.) "Any errors in factual contents or legal citations," he continued, "were unintentional as a result from Plaintiff's lack of formal legal training" and "not as an intent to mislead this honorable court." (*Id.* to 6:6.) He stated that "the filings that [he] filed were based on [his] ability to utilize certain research equipment online to help [him] navigate the legal system." (*Id.* at 6:7–6:9.) Plaintiff then revealed that he "utilized that system to help" him "in filing" papers "to the court." (*Id.* at 6:11.) He claimed to be unaware of any problems in his filings until the court pointed them out.

The court inquired what Plaintiff meant by "research equipment online." At this point, Plaintiff informed the court that he had been using an AI platform called "Cetient" to assist with his recent litigation efforts. *See* (*id.* at 7:5–8:17.) It was unclear, however, whether Plaintiff used Cetient for research, to obtain cases, or to actually draft documents. After initial probing, Plaintiff admitted that he had not read any of the cases cited in his filings as Cetient "did not produce the actual case[s] for [him] to read;" the program provides "just the citation" of a case along with some general "language" about it. (*Id.* at 9:13-15.) The court asked whether Plaintiff ever verified the accuracy of any cases, citations, or quotations that he received from Cetient. (*Id.* at 9:20-24). He responded that he is "not a lawyer" and was "relying on" the "app to assist [him]." (*Id.* at 10:1-2.)

Given the non-answer, the court pivoted. The undersigned recited Plaintiff's missteps with citing fake caselaw and making false promises to the court in his filings. (*Id.* at 10:8–13:19.) The court then followed up with more specific questions about Plaintiff's filings. Plaintiff could muster nothing in response. He deflected and acted confused,[3] even after he was handed copies of the

---

[3.] For instance, when initially asked why he promised to submit a copy of a nonexistent case, Plaintiff stated that he "did not intend to file a copy" and was unsure what promise the court referred to. *See* (doc. #34 at 13:12-15).

court's orders and his own filings and shown exactly where he made false statements. *See* (*id.* at 14:7–29:14.) After some discussion of his case against the Treasury (in which he had also recently filed falsities) (*id.* at 29:21–59:25), the undersigned again detailed to Plaintiff all his false statements in this case. (*Id.* at 60:1-15.) Although it took over an hour, and caused Plaintiff to contradict himself under oath, Plaintiff eventually signaled some slight notion of responsibility for his actions. He was willing to admit that he struggled with "understanding [] certain rules and regulations" (*i.e.*, Rule 11) and promised that he would be "taking [Rule 11] into consideration and into account [in] [his] actions moving forward." Plaintiff averred that "a judgment will be made to make sure that [he is] doing the full due diligence to make sure that everything that [he] bring[s] before this court before it is filed" is accurate. (*Id.* at 71:16-23.) He seemed, at least, apologetic. (*Id.* at 72:2-17.) The hearing concluded and the undersigned took the sanctions issue under advisement.

### C. Recent Violations

On March 23, 2026, Plaintiff requested the clerk of court to enter default judgment because he had served Defendants ("[p]roof of service has been filed this [c]ourt," he says) and they have not answered. *See* (doc. #18). Those are false statements of fact. The request also says that it includes an exhibit (it does not) and bears the watermark of the Cetient AI website. *See* (*id.* at 1).

On March 25, 2026, Plaintiff moved for default judgment. (Doc. #19.) It misrepresents that "summons was duly issued," that service was completed, that Defendants failed to respond, and that the clerk of court entered default at Plaintiff's request (and that the court has a copy of that entry). *See* (*id.* at 1–2). This filing also bears the logo of Cetient AI. *See* (*id.* at 1). The falsities in each of these two filings, added with all previous ones (not including fake case citations), brings Plaintiff's total of false contentions made in this case to the double digits.

## II. Applicable Law

Under Federal Rule of Civil Procedure 11(b), when an "unrepresented party" like Plaintiff "present[s] to the court a pleading, written motion, or other paper," they "certif[y]," among other things, that (3) "the factual contentions" they make "have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." When the court suspects that a party has made an unsupported contention, it may "[o]n its own" order a party "to show cause why [their] conduct . . . has not violated Rule 11(b)." FED. R. CIV. P. 11(c)(3). If, after the show-cause hearing, "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction." FED. R. CIV. P. 11(c)(1). "Sanctions imposed on the district court's [own] initiative . . . are limited to nonmonetary sanctions or a monetary penalty payable to the court," *Marlin v. Moody Nat'l Bank*, 533 F.3d 374, 379 (5th Cir. 2008) (referencing FED. R. CIV. P. 11(c)(4)), and the court should impose only "the least severe sanction adequate to accomplish Rule 11 objectives." *Ferris v. Amazon.com Servs., LLC*, 778 F.Supp.3d 879, 881 (N.D. Miss. 2025). As Plaintiff is aware, Rule 11 "applies to all parties, including *pro se* litigants." *Id.*; E.D. TEX. LOC. R. CV-11(g); *see also Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568 (5th Cir. 2006) (explaining that, while only attorneys can be sanctioned for "legally frivolous pleadings," all parties, including clients, may be sanctioned for "*factually* groundless allegations").

## III. Discussion

"A litigant's using AI and then failing to verify the accuracy of the results it yields violates the litigant's Federal Rule of Civil Procedure 11 obligations." *Willis v. U.S. Bank Nat'l Ass'n*, No. 25-CV-516, 2025 WL 1224273, at *3 (N.D. Tex. Apr. 28, 2025) (Horan, Mag. J.) (referencing *Sanders v. United States*, 176 Fed. Cl. 163, 169 (2025)). "Once a court finds that . . . a party has violated Rule 11, the imposition of sanctions is mandatory." *Anderson v. L. Firm of Shorty, Dooley*

6

*& Hall*, 697 F.Supp.2d 664, 667 (E.D. La. 2010) (citing *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 876 (5th Cir. 1988) ("There are no longer any 'free passes' for attorneys and litigants who violate Rule 11.")). The court enjoys "considerable discretion" in imposing sanctions, but any imposed "should be the least severe sanction adequate to accomplish the purpose of Rule 11," which is "deterrence, punishment, and compensation." *Ferris*, 778 F.Supp.3d at 881 (quoting *Thomas*, 836 F.2d at 876–79).

### A. Appropriate Sanction

Here, Plaintiff has violated Rule 11 multiple times and thus punishment must be imposed. Most courts elect to warn *pro se* plaintiffs when their use of AI leads to Rule 11 violations, given the novelty of the technology. *See Sanders*, 176 Fed. Cl. at 170. However, the court reminded Plaintiff of his Rule 11 obligations and warned him of the dangers from using AI after he submitted AI-created falsities to the court the first time (doc. #6), and Plaintiff still submitted more AI hallucinations afterwards, *e.g.* (doc. #14), so a warning will not do. Additionally, as Plaintiff proceeds *in forma pauperis*, monetary sanctions are typically insufficient. *Cf. Thrasher v. City of Amarillo*, 709 F.3d 509, 514 (5th Cir. 2013). Thus, the only effective option seems to be dismissal,[4] which, here, would be warranted because Plaintiff further violated Rule 11 through AI use after being warned of that risk. *See, e.g.*, *Everett J. Prescott, Inc.*, 2025 WL 2084353, at *2; *Kruglyak v. Home Depot U.S.A., Inc.*, 774 F.Supp.3d 767, 769–72 (W.D. Va. 2025). But for Plaintiff, dismissal here is not much of a sanction (he filed 11 cases in 2025 alone, even as the earlier ones were all dismissed), and the district court has already announced an intention to dismiss this case for Plaintiff's failure to pay the filing fee as ordered. *See* (doc. #9).

---

[4.] The court could consider a pre-filing injunction, *see Everett J. Prescott, Inc. v. Beall*, No. 1:25-CV-71, 2025 WL 2084353, at *2 (D. Me. July 24, 2025), but as said, Plaintiff's behavior has already led to a report and recommendation advising such an injunction in another case, *see* No. 1:25-CV-68 (E.D. Tex.). Because he also misused AI in that case, the recommended injunction already contemplates deterring Plaintiff's future AI use.

Given the above-discussed and noted considerations, it is difficult to craft an appropriate sanction here. While monetary sanctions imposed against litigants with pauper privilege can be seen as "fruitless," *Thrasher*, 709 F.3d at 514, and have been described as "toothless," *Burris v. Wilmington Sav. Fund Soc'y*, No. 1:24-CV-225-MJT-CLS, 2024 WL 4984441 (E.D. Tex. Nov. 5) (citation omitted), *R. & R. adopted*, 2024 WL 4880399 (E.D. Tex. Nov. 22, 2024), *aff'd*, No. 24-40838, 2026 WL 252658 (5th Cir. Jan. 30, 2026), they still serve their purpose—and the undersigned finds that imposing them would be more effective than a mere admonishment. Thus, due to Plaintiff's false contentions and fake citations made to the court on and before January 6, 2026, and the resultant show-cause hearing, the court will recommend imposition of monetary sanctions against Plaintiff.

### B. Further Violations

As said, Plaintiff recently requested default and submitted a motion for default judgment in this case, and his motion contains more demonstrably false factual contentions. *See* (doc. #19). The Fifth Circuit, however, instructs that any Rule 11 violation be judged "[l]ike a snapshot." *Skidmore Energy*, 455 F.3d at 569; *see Thomas*, 836 F.2d at 874–85. Here, however, the snapshot test does not prevent imposing sanctions for Plaintiff's recent Rule 11 violations because Plaintiff was well-aware of the Rule 11 when he made the filings, and moreover because he expressly promised that every future filing would be "factually accurate." (Doc. #17 at 71:3.) Plaintiff knowingly violated Rule 11 when he broke that promise, so he must be sanctioned for the content of his recent motion. *See Everett J. Prescott, Inc.*, 2025 WL 2084353, at *2 (explaining that a warning is not needed nor sufficient when *pro se* plaintiff defies own promise to ensure no falsities in filings); *Robinson v. Oglala Sioux Tribe*, No. 25-CV-289, 2025 WL 2609573, at *3–4 (W.D. Okla. Sept. 9, 2025) (same); *see also ByoPlanet Int'l, LLC v. Johansson*, 792 F.Supp.3d 1341,

1354 (S.D. Fla. 2025) (attorney subject to automatic sanction when filed AI-hallucinated content after being put on notice about AI risks); *O'Brien v. Flick*, No. 24-CV-61529, 2025 WL 242924, at *7 (S.D. Fla. Jan. 10) (same), *aff'd*, No. 25-10143, 2025 WL 2731627 (11th Cir. Sept. 25, 2025).

Thus, the undersigned will recommend an additional monetary sanction (that considers Plaintiff's economic standing) as punishment for Plaintiff's recent Rule 11 violation—and another hearing is not required to enter this sanction because the option to object (for which Plaintiff will be given three extra pages) to this Report and Recommendation provides Plaintiff the opportunity to respond in Rule 11(c)(1). *See Jabary v. McCullough*, 325 F.R.D. 175, 183 (E.D. Tex. 2018) (citing *Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1192 (5th Cir. 1996)); *cf. Alexander v. Trump*, 753 F.App'x 201, 208 (5th Cir. 2018) (explaining that, when courts *sua sponte* dismiss *pro se* claims, a magistrate judge's report and recommendation and the 14-day objections period gives notice and an opportunity to respond that is sufficient for due-process purposes).

### IV. Recommendation

The undersigned therefore **RECOMMENDS** that the district court **SANCTION** Plaintiff under Federal Rule of Civil Procedure 11(b). The district court should order Plaintiff to:

**(1)** pay $100.00 to the court as a sanction for his false contentions and AI caselaw citations leading up to the January 6, 2026 hearing; **and**

**(2)** pay $100.00 to the court as a sanction for the Rule 11(b) violations that he committed by filing the March 25, 2026 default-judgment motion.

### V. Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding

or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Without leave of court, **objections are limited to eight (8) pages**. E.D. TEX. LOC. R. CV-72(c).

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 7th day of May, 2026.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE